**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**DEBBIE KOPSZYWA**                                                    **PLAINTIFF**

**VERSUS**                          **CIVIL ACTION NO. 1:12-cv-394-HSO-RHW**

**HOME DEPOT U.S.A., INC.**                                      **DEFENDANT**

---

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S [77] MOTION FOR SUMMARY JUDGMENT
AND FINDING MOOT DEFENDANT'S [75] MOTION TO STRIKE**

BEFORE THE COURT are the Motion to Strike [75] and the Motion for

Summary Judgment [77] filed by Defendant Home Depot U.S.A., Inc.  Both Motions

are now fully briefed.  Having considered the parties' submissions, the record, and

relevant legal authorities, the Court is of the opinion that Defendant is entitled to

judgment as a matter of law as to all claims asserted against it by Plaintiff Debbie

Kopszywa.  Defendant's Motion for Summary Judgment [77] should be granted, and

Defendant's Motion to Strike [75] is moot.

## I. BACKGROUND

A.    Factual Background

Plaintiff Debbie Kopszywa ("Plaintiff") began her employment with

Defendant Home Depot U.S.A., Inc. ("Defendant") in 1999 as a Loss Prevention

Supervisor.  Second Am. Compl. [22] at 2; Aff. of Debbie Kopszywa [83-2] at 1.

From 2001 until 2008, Plaintiff worked as an Assistant Store Manager for

Operations for Defendant at different Home Depot retail store locations, including

from 2006 to 2008 at the Home Depot store in Biloxi, Mississippi.  Aff. of Debbie

1

Kopszywa [83-2] at 1; Dep. of Debbie Kopszywa [83-1] at 29.  The Biloxi store employed between 85 and 120 employees depending on the time of the year.  Dep. of Debbie Kopszywa [83-1] at 40.

Defendant promoted Plaintiff to Store Manager of its Home Depot store in Waveland, Mississippi, in June 2008.  Aff. of Debbie Kopszywa [83-2] at 1; Dep. of Debbie Kopszywa [83-1] at 38. The Waveland store, with between 35 and 50 employees, was smaller than the Biloxi store.  Dep. of Debbie Kopszywa [83-1] at 39.  When the Waveland store closed in January 2010, District Manager Ronnie Cheeks ("Cheeks") and Pam Holland ("Holland") from the Home Depot Human Resources Department spoke with Plaintiff about transferring her to manage the Home Depot store in Picayune, Mississippi, and "strongly suggested that [Plaintiff] move there."  *Id.* at 39, 61.  Cheeks was Home Depot's District Manager for the area which included the Picayune store.  *Id.* at 63.  Holland and Reyon McCarthy ("McCarthy") worked in Defendant's Human Resources Department during the time Plaintiff worked at the Picayune store.  Aff. of Debbie Kopszywa [83-2] at 3; Dep. of Debbie Kopszywa [83-1] at 55-57, 64-65. Desi Broussard ("Broussard") worked as Defendant's District Operations Manager during the relevant time period.  Dep. of Desi Broussard [83-6] at 13-14.

Plaintiff became Store Manager in Picayune on January 25, 2010.  *Id.* at 39, 61-62.[1]  Picayune was a larger store than Waveland and employed between 95 and 125 workers, depending on the season.  *Id.* at 62-63.  As Store Manager, Plaintiff

---

[1] After Plaintiff transferred to Picayune, Defendant closed the Waveland store.  Dep. of Debbie Kopszywa [83-1] at 60—61.

would receive a mid-year review and a formal year-end evaluation every year.  Dep. of Debbie Kopszywa [83-1] at 54.  Home Depot store managers would perform a self-evaluation prior to the midyear review and submit it to their district managers.  *Id.*  Store managers would then create a development plan for themselves and forward the plan to their district managers, who would in turn review and made additions to the plan.  *Id.* at 87.  District managers conducted the formal evaluation of store managers once a year.  *Id.* at 54-55.

During the summer of 2010, Scott Murry[2] became Defendant's District Manager.  Murry's district included the Mississippi Gulf Coast area as well as the Picayune store.  Aff. of Debbie Kopszywa [83-2] at 1;  Dep. of Debbie Kopszywa [83-1] at 81; Dep. of Desi Broussard [77-2] at 20.  Murry would conduct a monthly District Business Walk ["DBW"] with "all the district people" from Home Depot in the Picayune store and would also "pop in" the store about twice a month.  Dep. of Debbie Kopszywa [83-1] at 81-82.  Murry conducted a mid-year evaluation of Plaintiff's performance in September 2010 and an annual evaluation of Plaintiff's performance in March 2011.  Aff. of Debbie Kopszywa [83-2] at 1-2; Dep. of Debbie Kopszywa [83-1] at 89-90; *see also* Mid-Year Eval. [83-8] at 1-2; Annual Eval. [83-9] at 1-2.

In Plaintiff's March 2011 annual evaluation, Murry summarized his assessment of Plaintiff's performance as follows:

[t]hough some areas of Debbie's performance were above average for the year, there are other areas that will need to improve quickly in

---

[2] At some places in the record, Murry's last name is spelled Murray.  *See, e.g.,* Aff. of Debbie Kopszywa [83-2] at 1.  For purposes of this Order, the Court will use "Murry."

2011.  The execution around the Specialty and Services business was not consistent through the year.  Debbie will also have to find ways to grow her Pro customer base and ensure all the tools and resources are utilized to help in execution.  Controlling the minimum aspects of running these parts of our business will have to be a top priority for her.

Annual Eval. [83-9] at 1.  Murry identified the following key development needs:

Acts Strategically:  Debbie needs to do a better job of staying in front of her business issues in Specialty, Services and Pro.  I need her to take a proactive approach to planning where we are going to earn our business in these areas and how we are going to get it.  We can't wait for something to happen but rather create our own environment.

Delivers Results:  Specialty, Services and Pro.  She needs to drive execution and stay on top of things to ensure success.  Clear direction needs to be given and follow up needs to happen to identify issues.

*Id.*  Plaintiff testified in her deposition that she did not have any problems with Murry after the mid-year and annual evaluations, and did not feel as though Murry was treating her unfairly.  Dep. of Debbie Kopszywa [83-1] at 89-91.

In June 2011, an opening became available for the Store Manager position at the Home Depot store in Biloxi, Mississippi.  Second Am. Compl. [22] at 2; Dep. of Debbie Kopszywa [83-1] at 91-93.  Plaintiff asked Murry to transfer her to this open Store Manager position.  Second Am. Compl. [22] at 2; Dep. of Debbie Kopszywa [83-1] at 91-92.  Plaintiff testified that after she requested the transfer, Murry walked through her Picayune store every week until Murry decided whom to hire for the vacant Biloxi Store Manager position. Dep. of Debbie Kopszywa [83-1] at 93.  In July or August 2011, Defendant ultimately hired a male assistant manager from a store in Atlanta, Georgia, to manage the Biloxi location.  Second Am. Compl. [22] at 2; Dep. of Debbie Kopszywa [83-1] at 95-96; Rule 30(b)(6) Dep. of Defendant

4

through Scott Murry [83-3] at 124.  Murry informed Plaintiff of the decision and told Plaintiff that she was not transferred because she had not yet been working as Store Manager in Picayune for two years and that it was a general rule for store managers to remain in a store for at least two years.  Dep. of Debbie Kopszywa [83-1] at 94; Dep. of Debbie Kopszywa [83-1] at 94-95.[3]  Plaintiff expressed her disappointment to Murry in not receiving the position, but did not complain to anyone else at Home Depot about not receiving the transfer. Dep. of Debbie Kopszywa [83-1] at 98-99.  Plaintiff believes that she began experiencing problems with Murry after she asked to be transferred to the Biloxi store.  Dep. of Debbie Kopszywa [83-1] at 91.

In July 2011, Murry counseled Plaintiff in writing by way of a Performance/Discipline Notice, for being out of stock of certain bathtubs at the Picayune store.  Dep. of Debbie Kopszywa [83-1] at 150; July 2011 Notice [83-10] at 1.  Plaintiff admitted that she was out of stock of the bathtubs during Murry's walkthrough and, in fact, Plaintiff had written up her assistant manager Allison Barlow for this same error.  Dep. of Debbie Kopszywa [83-1] at 78-79, 101, 111-12, 125, 150-53, 183.  Plaintiff agreed that, as the Store Manager, she was ultimately responsible for making sure that the store had items in stock.  *Id.* at 183.

---

[3] Murry testified that Plaintiff did not receive the transfer to the Biloxi store for two reasons:  (1) Plaintiff's lack of performance in the Picayune store, which was a smaller volume store than the Biloxi one; and (2) Plaintiff had not been in the Picayune store location for a minimum of two years, which is a general rule that Defendant uses to "drive consistency in associates not having changing [sic] managers on a yearly basis."  Dep. of Scott P. Murry [77-3] at 129-30.

About a month after her transfer from Waveland to Picayune, Plaintiff rented an apartment in Picayune because she lived an hour away from the store.  *Id.* at 98-99.  Two of Plaintiff's assistant store managers also lived 45 minutes to an hour away from the Picayune store.  *Id.*  Plaintiff informed her two female assistant store managers that, "if they ever felt uncomfortable, they could stay at the apartment."  *Id.* at 99-100; *see also id.* at 156-57.  One of the two female assistant managers was Plaintiff's long-time friend, Allison Barlow.  *Id.* at 99-100; *see also id.* at 56-57.  Defendant received complaints on its "Aware Line" from employees about Plaintiff's closeness with Barlow.  *Id.* at 100-01.  Plaintiff then received a second written "discipline coaching" from Murry on August 23, 2011, for giving "the appearance of playing favorites" with her employees.  *Id.* at 100-01, 113-14; *see also* Aff. of Debbie Kopszywa [83-2] at 2; Aug. 2011 Notice [83-11] at 1.  Plaintiff agreed in her deposition that the appearance of a store manager showing favoritism towards employees violates the Home Depot Code of Conduct.  Dep. of Debbie Kopszywa [83-1] at 183.  The August 2011 Notice also warned Plaintiff that "[a]ny further instances of Code of Conduct violations could result in future discipline coachings or termination."  Aug. 2011 Notice [83-11] at 1.

 In September 2011, about a week after issuing the August 2011 Notice, Murry verbally counseled Plaintiff for smoking a cigarette behind the Picayune store while wearing a Home Depot apron.  Dep. of Debbie Kopszywa [83-1] at 135; Aff. of Debbie Kopszywa [83-2] at 4; Dep. of Scott P. Murry [77-3] at 215.  Plaintiff admits that she was smoking in the apron and that under the Home Depot Code of

Conduct, she could have received a more serious write-up for the infraction.  Dep. of Debbie Kopszywa [83-1] at 135-36; Aff. of Debbie Kopszywa [83-2] at 4.

Plaintiff received a third Performance/Discipline Notice with written counseling in October 2011.  Dep. of Debbie Kopszywa [83-1] at 115, 160; Oct. 2011 Notice [83-12] at 1.  Murry counseled Plaintiff for not displaying air filters as directed and for not contacting or documenting contact with customers regarding a "5% off" promotion as she had been directed.  Notice [83-12] at1.  The October 2011 Notice warned that "[c]ontinued issues around lack of performance and attention to detail will result in further performance documentation which can include a Performance Improvement Plan, or possible termination of [Plaintiff's] employment."  *Id.*

Plaintiff received a final Performance/Discipline Notice in November 2011 for failing to follow through with directions to control inventory levels, specifically regarding some roofing shingles, and with directions to mark certain special order lighting as 75% off.  Dep. of Debbie Kopszywa [83-1] at 117, 167; Nov. 2011 Notice [83-13] at 1.  The Notice warned that "[i]f continued lack of execution and results are delivered, it will lead to a performance improvement plan and or termination."  Nov. 2011 Notice [83-13] at 1.  Plaintiff admitted in her deposition that she failed to follow up after she directed her department supervisor to hang the 75%-off special order lighting sign referenced in the Notice.  Dep. of Debbie Kopszywa [83-1] at 171-72.

Plaintiff claims that during the last six months of her employment with Defendant, Plaintiff spoke with Reyon McCarthy in Human Resources "on a weekly basis" regarding Murry's treatment of Plaintiff and informed McCarthy that Plaintiff was "being targeted" by Murry for termination. Dep. of Debbie Kopszywa [83-1] at 118; Aff. of Debbie Kopszywa [83-2] at 3. Plaintiff alleges that she told McCarthy "on several occasions" that Plaintiff "believed this was because of [her] gender and [her] age." Aff. of Debbie Kopszywa [83-2] at 4. According to Plaintiff, McCarthy recommended that Plaintiff speak with Holland in Human Resources. Dep. of Debbie Kopszywa [83-1] at 118-19.

Plaintiff asserts that after Murry had identified the issues documented in the Plaintiff's last Performance/Discipline Notice in November 2011, but before she actually received the Notice, she complained to Holland on a Friday about her recent write-ups from Murry, stating that she "was a target." *Id.* at 103-04, 118-19, 129. Holland informed Plaintiff that "she would discuss it with [Murry]." *Id.* at 103-04. Plaintiff testified that Holland called her back the following Monday and informed Plaintiff that Holland had called Murry and "had a discussion with him" about Plaintiff's concerns. *Id.* at 129. According to Plaintiff, Holland informed Plaintiff that she "needed to try to sit down and talk to [Murry]." *Id.* Plaintiff subsequently received the November 2011 Performance/Discipline Notice from Murry. *Id.* at 104; Nov. 2011 Notice [83-13] at 1.

Murry received a promotion in December 2011 and left the District Manager position. Dep. of Debbie Kopszywa [83-1] at 126; Rule 30(b)(6) Dep. of Defendant

through Scott Murry [83-3] at 118.  At some point before Murry's promotion, Murry

initiated the idea of terminating Plaintiff with District Human Resources Manager

Reyon McCarthy because of Plaintiff's "[f]ailure of performance."  Rule 30(b)(6) Dep.

of Defendant through Scott Murry [83-3] at 18, 54-56.  Murry drafted a request for a

severance package for Plaintiff using information submitted by McCarthy, Regional

Associates Relations Manager Holland, and District Operations Manager

Broussard.  Request [83-14] at 1-2; Dep. of Desi Broussard [83-6] at 74-75.  The

request detailed the written counseling and verbal coaching Plaintiff had received

as well as the results of the mid-year and annual performance evaluations, a

summary of Plaintiff's history with Defendant, and photographs taken by Murry at

the Picayune store documenting specific issues. Request [83-14] at 1-2; Rule 30(b)(6)

Dep. of Defendant through Scott Murry [83-3] at 54-63.  Holland reviewed the

request for severance package and approved the recommendation to terminate

Plaintiff.  Rule 30(b)(6) Dep. of Defendant through Scott Murry [83-3] at 57-58.

Holland submitted the recommendation to Defendant's Regional Vice President Tim

Wilkerson, who approved it.  Holland then sent the recommendation to Divisional

Human Resources Manager Gwen Chandler, who also approved it.  *Id.*

Defendant terminated Plaintiff's employment on January 6, 2012.  Second

Am. Compl. [22] at 4.  Patty Stoddard, a District Manager for the New Orleans,

Louisiana, district informed Plaintiff of the termination.  Dep. of Debbie Kopszywa

[83-1] at 126; Rule 30(b)(6) Dep. of Defendant through Scott P. Murry [83-3] at 59.

McCarthy was present at the termination meeting.  Dep. of Debbie Kopszywa [83-1]

9

at 127.  Defendant offered Plaintiff a severance package which Plaintiff declined.  *Id.*

Plaintiff was 57 years old at the time of her termination.  Dep. of Debbie Kopszywa [83-1] at 7, 126. Defendant replaced Plaintiff with a new Store Manager named Barry Todd, a male who was younger than Plaintiff.  Rule 30(b)(6) Dep. of Defendant through Scott P. Murry [83-3] at 281; Dep. of Desi Broussard [83-6] at 133.[4]  Plaintiff alleges that Murry alone discriminated against her during her employment.  Dep. of Debbie Kopszywa [83-1] at 121.  Plaintiff believes that Murry "treated [her] different than he treated the other store managers there."  *Id.* According to Plaintiff, at a store manager meeting held in October 2011, Murry "would have discussions and friendly discussions with the . . . other store managers," but would "not even acknowledge [Plaintiff] in that room."  *Id.* at 121-22.  Plaintiff also complains that Murry walked her Picayune store once a week during the two months Murry was considering Plaintiff for the transfer to Biloxi, but did not walk other stores which had male store managers as often.  *Id.* at 122-23.  Murry did not continue the weekly walks through the Picayune store after Murry filled the Biloxi Store Manager position.  *Id.* at 123.

B.    Procedural Background

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 3, 2012.  EEOC Charge [5-1] at 1.  Plaintiff's EEOC Charge alleges that Defendant discriminated against

---

[4] While Murry did testify that Todd was younger than Plaintiff, the record does not reveal Todd's age at the time he replaced Plaintiff as Picayune Store Manager.

Plaintiff on the basis of her gender and age and retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA").  The parties do not appear to dispute that Plaintiff received a right to sue letter from the EEOC.  Plaintiff sued Defendant in this Court on December 17, 2012.  Compl. [1] at 1.  Plaintiff arguably advanced claims for gender and age discrimination, hostile work environment, and retaliation.  *Id.* at 4-5.  Plaintiff filed an Amended Complaint [17] on August 28, 2013, and a Second Amended Complaint [22] on September 13, 2013.  The Second Amended Complaint likewise advances claims for gender and age discrimination, hostile work environment, and retaliation.   Second Am. Compl. [22] at 5-6.

Defendant now moves for summary judgment on Plaintiff's claims, arguing that Plaintiff cannot establish that Defendant discriminated against her, subjected her to a hostile work environment, or retaliated against her in violation of either Title VII or the ADEA.  Mot. [77] at 1-2.  Defendant maintains that Plaintiff cannot support a prima facie case of actionable discrimination or retaliation under the *McDonnell Douglas* burden-shifting framework.  Mem. in Supp. of Mot. [78] at 15-18, 23-26; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Defendant posits that even if Plaintiff could make out a prima facie case of discrimination, legitimate, non-discriminatory reasons existed for Defendant's decision to terminate Plaintiff's employment.  *Id.* at 18-20.  With respect to Plaintiff's hostile work environment claims, Defendant argues that Plaintiff has no

11

actionable claims for gender- or age-based harassment because there was no abusive or hostile working environment. *Id.* at 20-22. Even if Plaintiff's allegations did rise to the level of creating a hostile work environment, Defendant contends that "Plaintiff offers no evidence they were in any way related to her age or gender." *Id.* at 22.

Plaintiff responds that she has presented a prima facie case of gender and age discrimination and that she has raised a genuine issue of material fact as to whether Defendant's proffered reasons for her termination were a pretext for gender and/or age discrimination. Mem. Supp. of Resp. in Opp'n to Mot. [84] at 19-28. Plaintiff maintains that her gender- and age-based harassment claims can withstand summary judgment because a question of fact exists as to whether Murry's purported treatment of her was objectively offensive. *Id.* at 28-29. Plaintiff further argues that she has adequately supported actionable retaliation claims because she engaged in protected activity and then suffered three separate adverse employment actions, the performance/discipline notices she received in October and November 2011, and her termination in December 2011. *Id.* at 29-33.[5]

Defendant has also filed a Motion to Strike [75] the expert reports and exclude the opinion testimony of Plaintiff's proffered expert Cynthia Webster, Ph.D. Mot. [75] at 1. Defendant anticipates that Plaintiff will call Webster "to testify as

---

[5] While Plaintiff references the denial of her transfer request to the Biloxi Store Manager position, Plaintiff does not argue in briefing the Motion for Summary Judgment that she was discriminated or retaliated against with respect to the denial of the transfer. In a previous pleading filed in this Court, Plaintiff has represented that she "does not make a claim that the June 2011 denial of transfer is a claim within this Complaint." Mem. in Supp. of Resp. [27] at 7.

an expert witness and/or attempt to enter Webster's reports into evidence." *Id.* Plaintiff responds that Webster's expert report should not be stricken and that Webster should be allowed to testify as an expert witness at trial.

## II. DISCUSSION

A.    Defendant's Motion for Summary Judgment

1.    Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In considering a motion for summary judgment, the Court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *RSR Corp. v. Int'l Ins. Co.*,

612 F.3d 851, 858 (5th Cir. 2010). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law," and "[a]n issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248). "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "The court has no duty to search the record for material fact issues." *RSR Corp.*, 612 F.3d at 858. "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.*

> 2.   <u>Analysis</u>

> a.   <u>Plaintiff's Gender and Age Discrimination Claims</u>

> (i)   <u>*McDonnell Douglas* Framework</u>

Plaintiff charges that Defendant discriminated against her based both upon her gender, in violation of Title VII, and her age, in violation of the ADEA. Because Plaintiff relies upon circumstantial evidence of Defendant's alleged discriminatory animus, the familiar *McDonnell Douglas* burden-shifting analysis applies to both discrimination claims. *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013) (ADEA) (citing *McDonnell Douglas*, 411 U.S. at 792); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (Title VII) (citing *McDonnell Douglas*, 411 U.S. at 792). Under both Title VII and the ADEA, the employee bears

the initial burden of establishing a prima facie case of discrimination.  *Miller*, 716

F.3d at 144 (ADEA);  *McCoy*, 492 F.3d at 556 (Title VII).

To establish a prima facie case of gender discrimination under Title VII, a

plaintiff must show:  (1) that she is a member of a protected class; (2) that she was

qualified for the position sought; (3) that she was subject to an adverse employment

action; and (4) that she was replaced by someone outside her protected class or was

treated less favorably than other similarly situated employees outside her class.

*Haire v. Bd. of Supervisors of La. State Univ. Agric. and Mech. Coll.*, 719 F.3d 356,

363 (5th Cir. 2013) (citation omitted).  To establish a prima facie case of

discrimination based upon age under the ADEA, a plaintiff must demonstrate: (1)

she was within the protected class; (2) she was qualified for the position; (3) that

she suffered an adverse employment decision; and (4) that she was "replaced by

someone younger or treated less favorably than similarly situated younger

employees (*i.e.*, suffered from disparate treatment because of membership in the

protected class)."  *Leal v. McHugh*, 731 F.3d 405, 410-11 (5th Cir. 2013) (quoting

*Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003)).  Under the

ADEA, "the protected class includes individuals who are at least forty years old."

*Id.* at 411 (citing 29 U.S.C. §§ 631(a), 633a(a)).

"[I]f the plaintiff establishes a prima facie case of discrimination, the burden

of production shifts to the employer to provide a legitimate, non-discriminatory

reason for the action."  *Haire*, 719 F.3d at 362-63 (citation omitted) (Title VII); *see

also Miller*, 716 F.3d at 144 (ADEA).  Once the employer does so, "the burden shifts

15

back to the plaintiff, who can attempt to show that the defendant's proffered reason is simply a pretext for discrimination." *Haire*, 719 F.3d at 363 (citation omitted) (Title VII); *see Miller*, 716 F.3d at 144 (ADEA). "[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 514 (1993) (emphasis in original) (citation omitted).

For a Title VII gender discrimination claim, "[a] plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Haire*, 719 F.3d at 363 (citation omitted). Under the ADEA, however, the employee must show that "the employer's proffered reason was not true—but was instead a pretext for age discrimination—or that, even if the employer's reason is true, [she] was terminated because of [her] age." *Miller*, 716 F.3d at 144. In other words, Title VII requires a plaintiff to prove that her gender was a "motivating factor" in the challenged employment decision, while the ADEA requires the "more demanding" "'but-for' standard of proof" with respect to age discrimination. *Leal*, 731 F.3d at 411.

(ii)    <u>Plaintiff's Prima Facie Case</u>

Defendant does not appear to contest, and the record evidence supports the conclusion, that:  (1) Plaintiff, a female over the age of 40 years old at the relevant time, was a member of a protected class under both Title VII and the ADEA; (2) Plaintiff was qualified for the store manager position; and (3) Plaintiff suffered an

16

adverse employment action when she was terminated by Defendant.  Plaintiff has therefore established the first three elements of a prima facie case of gender discrimination and age discrimination. *See Haire*, 719 F.3d at 363 (Title VII); *Leal*, 731 F.3d at 410-11 (ADEA).  Defendant challenges whether Plaintiff can show the fourth element of both claims.

Defendant argues that Plaintiff cannot support a prima facie case of either gender or age discrimination because Plaintiff has presented no evidence that she was treated differently than similarly situated employees outside of her protected class.  However, Plaintiff has presented evidence that Defendant replaced Plaintiff as Picayune store manager with a male who was younger than Plaintiff.   Rule 30(b)(6) Dep. of Defendant through Scott P. Murry [83-3] at 281; Dep. of Desi Broussard [83-6] at 133.  This is sufficient to establish the fourth element of a prima facie case of gender and age discrimination. *Haire*, 719 F.3d at 363 (under Title VII, that she was replaced by someone outside her protected class); *Leal*, 731 F.3d at 410-11 (under the ADEA, that she was replaced by someone younger).  Construing the evidence in the light most favorable to her, Plaintiff has carried her initial burden of making out a prima facie case of gender discrimination under Title VII and of age discrimination under the ADEA.  *Haire*, 719 F.3d at 363; *Leal*, 731 F.3d at 410-11.

(iii)   <u>Defendant's Legitimate, Non-Discriminatory Reasons</u>

The Court must next assess whether Defendant has supplied a legitimate, non-discriminatory reason for terminating Plaintiff.  *See Haire*, 719 F.3d at 362-63.

17

Based upon the competent summary judgment evidence, Defendant has met this burden.  Defendant has produced testimony and other evidence that Plaintiff was terminated because of "[f]ailure of performance."  Rule 30(b)(6) Dep. of Defendant through Scott Murry [83-3] at 18.  Murry's request for a severance package for Plaintiff included information submitted by McCarthy, Holland, and Broussard, and detailed a number of issues Defendant perceived with Plaintiff's performance as store manager.  Request [83-14] at 1-2.  According to Defendant, it terminated Plaintiff based upon these documented performance issues.

(iv)   <u>Pretext</u>

Because Defendant has offered a legitimate non-discriminatory reason for its decision to terminate Plaintiff, Plaintiff must show, by rebutting the non-discriminatory reason articulated by her employer, that Defendant's stated reason for termination was a pretext for discrimination.   Plaintiff relies upon several different theories in an effort to carry her burden of showing pretext.

Plaintiff argues that her Picayune store met most of the financial goals Defendant set for it and turned in a strong financial performance from July to December 2011, the period of time during which Murry claims that Plaintiff's management performance significantly declined.  Mem. Supp. of Resp. in Opp'n to Mot. [84] at 13-15, 22-27.  However, "evidence that the employer's investigation merely came to an incorrect conclusion does not establish a [discriminatory] motivation behind an adverse employment decision. Management does not have to make proper decisions, only non-discriminatory ones." *Bryant v. Compass Group*

*USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).  "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for termination.  *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

Plaintiff also relies upon the testimony of Allison Barlow. Mem. Supp. of Resp. in Opp'n to Mot. [84] at 26.  Barlow, a female who was 50 years old when Plaintiff was terminated, testified that Murry would speak differently to her than he did to the younger males who worked at the Picayune store.  Dep. of Allison Barlow [83-16] at 11, 44.  Barlow complained that Murry "wouldn't make eye contact.  If you tried to speak, he would cut you off.  It was kind of a harsh, berating, condescending – it was tough."  *Id.*  Barlow testified that Murry spoke to Plaintiff the same way Murry spoke to Barlow.  *See id.*  With respect to how Murry purportedly treated Plaintiff, Barlow testified that "he didn't like us."  *Id.* at 8. According to Barlow,

> I felt Scott held me accountable to a much higher level of accountability than other SASMs that were in my position. That's special assistant store manager. And he held Debbie accountable for those areas of performance, but other stores weren't being held accountable to that same standard.
> \* \* \*
> I don't feel like Scott talked to me the same way he talked to Lance, my counterpart at the store.

*Id.* at 9, 10.  When asked if she thought Murry was not treating people appropriately, Barlow testified, "I didn't think he was treating me and Debbie appropriately."  *Id.* at 60.

In support of her age discrimination claim, Plaintiff further asserts that Murry recommended the termination of three store managers in his district, including Plaintiff and two male managers.  Mem. Supp. of Resp. in Opp'n to Mot. [84] at 15-16.  Murry allegedly caused another male store manager to quit after that manager received five performance/discipline notices over an eight-month period. *Id*.  Plaintiff maintains that all four store managers were over the age of forty at the time, and that all were replaced by younger employees.  *Id*.  The evidence presented in support of Plaintiff's Response to Defendant's Motion for Summary Judgment demonstrates that seven other Home Depot store managers who worked in the same district during Plaintiff's tenure as a store manager, all of whom are still employed by Defendant, range in age from 39 to 58 years old.  *See* Def.'s Answers to Pl.'s First Set of Interrogs. [83-7] at 4-5; Dep. of Debbie Kopszywa [83-1] at 7, 126.

To establish pretext on the basis of disparate treatment, Plaintiff is required to "compare [her] treatment to that of nearly identical, similarly situated individuals . . . [and] must show that [Defendant] gave preferential treatment to another employee under 'nearly identical' circumstances."  *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (citations omitted).  "In order for employees to be considered similarly situated, an employee alleging discrimination must show that the employees' circumstances, including their misconduct, were nearly identical."  *Gilbert v. Brookshire Grocery Co.*, 354 F. App'x 953, 954 (5th Cir. 2009) (citing *Perez v. Tex. Dep't of Criminal Justice, Institutional Div.*, 395 F.3d 206,

2013 (5th Cir. 2004)).   This includes having nearly identical "violation histories." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011).

Plaintiff has not sufficiently identified a "nearly identical, similarly situated" male and/or younger co-employee, nor has Plaintiff presented sufficient competent evidence that Defendant gave any such male or younger co-employee "preferential treatment . . . under 'nearly identical' circumstances."  *Id*.  Plaintiff has not identified any male employees who were similarly situated to her and who received treatment preferential to her under nearly identical circumstances, particularly as it relates to Plaintiff's performance issues.  Plaintiff's general reference to four other managers over the age of 40 being terminated, by itself, is likewise insufficient to sustain this burden as to the age discrimination claim.  No evidence has been submitted to show the circumstances under which these other managers were terminated.

Although Plaintiff makes a general assertion that Murry treated younger, male employees better, Plaintiff has not sufficiently identified any particular male and/or younger store manager who received treatment preferential to that which Plaintiff received under nearly identical circumstances, particularly with respect to the various disciplinary notices and verbal coaching Plaintiff received in the waning months of her employment with Defendant.  Plaintiff acknowledged in her deposition that she committed the majority of these infractions.  Dep. of Debbie Kopszywa [83-1] at 78-79, 101, 111-12, 125, 135-36, 150-53, 171-72, 183.

In short, Plaintiff has not shown that each of Defendant's legitimate, non-discriminatory reasons for terminating her employment was false.  Even if Defendant's reasons for Plaintiff's termination were shown to be false, Plaintiff has not presented sufficient competent summary judgment evidence to create a triable fact question that discrimination was the reason for Plaintiff's termination.  *See St. Mary's Honor Center*, 509 U.S. at 514.   Plaintiff has not shown that gender was a motivating factor in her termination, or that age was the "but-for cause" of her termination.  *See Leal*, 731 F.3d at 411; *Haire*, 719 F.3d at 363.  At most, Plaintiff has presented her own subjective beliefs along with a mere scintilla of evidence to show pretext.  "A mere scintilla of evidence of pretext does not create an issue of material fact in all cases."  *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902–03 (5th Cir. 2000).  Based upon the record before the Court, no reasonable juror could find that Defendant's non-discriminatory reasons for terminating Plaintiff were a pretext for gender or age discrimination.  Nor could a reasonable jury find that, "but for" Plaintiff's age, she would not have been terminated.

Aside from the fact that Plaintiff's store manager position was assumed by a younger male employee following her termination, Plaintiff has submitted insufficient summary judgment evidence to discredit Defendant's non-discriminatory reasons for terminating Plaintiff.  Defendant was unsatisfied with Plaintiff's performance as Store Manager in Picayune, Plaintiff was disciplined in some fashion a number of times for performance issues over the five months preceding her termination, and ultimately, Plaintiff was terminated because of

these perceived performance failures.  The fact that Plaintiff now disagrees with the correctness of these decisions is not enough by itself to establish that a discriminatory animus regarding Plaintiff's gender more likely motivated Defendant's decision, or that Defendant's explanation is unworthy of credence. *Haire*, 719 F.3d at 363.  Nor has Plaintiff shown that "the employer's proffered reason was not true—but was instead a pretext for age discrimination—or that, even if the employer's reason is true, [she] was terminated because of [her] age." *Miller*, 716 F.3d at 144.  While Plaintiff may genuinely believe that her termination was the result of discrimination, Plaintiff's subjective belief that Defendant's actions were based upon her gender or age is insufficient to create an inference of discriminatory intent.  *See Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999).  Defendant is entitled to summary judgment on Plaintiff's gender and age discrimination claims.

  b. <u>Plaintiff's Retaliation Claims</u>

  (i) <u>The Burden Shifting Standard</u>

   The *McDonnell-Douglas* burden-shifting framework also guides analysis of a retaliation claim based on circumstantial evidence.  *McCoy*, 492 F.3d at 556 (Title VII); *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998) (ADEA).  To establish a prima facie case of retaliation under Title VII or the ADEA, a plaintiff must establish that: (1) she participated in a protected activity pursuant to the appropriate statute; (2) her employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and

the adverse employment action. *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (citations omitted) (Title VII); *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001) (ADEA).

As with discrimination claims, if the plaintiff presents a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-retaliatory reason for the action. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 805 (5th Cir. 2007) (Title VII); *Sherrod*, 132 F.3d at 1122 (ADEA). Once the employer meets its burden of production, the burden then shifts back to the employee, who must establish by a preponderance of the evidence that the employer's reason for the adverse employment action was a pretext for retaliation. *Strong*, 482 F.3d at 806 (Title VII); *Sherrod*, 132 F.3d at 1122 (ADEA). A plaintiff must demonstrate pretext by showing that "the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Feist v. La. Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (Title VII) (citation omitted); *see also Sherrod*, 132 F.3d at 1122 (ADEA). "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Feist*, 730 F.3d at 454 (citation omitted).

Both Title VII and ADEA retaliation claims require proof according to traditional principles of but-for causation. *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) (Title VII); *Sherrod*, 132 F.3d at 1122 (ADEA). "This requires proof that the unlawful retaliation would not have occurred in the absence

24

of the alleged wrongful action or actions of the employer," *Nassar*, 133 S. Ct. at 2533, or "that the adverse employment action would not have occurred 'but-for' the protected activity," *Sherrod*, 132 F.3d at 1122.  "The burden of establishing 'causal link' in the prima facie case is much less onerous than the burden of proving 'but-for' causation required for the determination of the ultimate issue of retaliation." *Sherrod*, 132 F.3d at 1122 n.8.

(ii)   <u>Plaintiff's Prima Facie Case</u>

Plaintiff claims that she engaged in protected activity before she was terminated by complaining to Reyon McCarthy in Defendant's Human Resources Department about Murry's allegedly discriminatory conduct. Mem. Supp. of Resp. in Opp'n to Mot. [84] at 30.  It is unclear from the summary judgment record when Plaintiff first told McCarthy she believed that Murry was targeting her because of her age and gender, just that she did so "on several occasions" during the last six months of her employment with Defendant.  Aff. of Debbie Kopszywa [83-2] at 3-4. Plaintiff's Memorandum in Support of her Response [84] states that "[o]f course, the Plaintiff did not complain about the targeting until after the targeting started to happen."  Mem. Supp. of Resp. in Opp'n to Mot. [84] at 31.  Plaintiff seems to assert that her protected activity began prior to her October 2011 Performance/Discipline Notice.  *Id.*  According to Plaintiff, after she complained to McCarthy, she was subjected to retaliation in the form of two disciplinary write-ups in October and November 2011, followed by her termination.  *Id.* at 31-32.

The parties dispute whether Plaintiff participated in a protected activity under the relevant statute. Plaintiff did not claim that she had complained to McCarthy that she was being targeted by Murry because of her gender and age until she submitted her Affidavit [83-2] in support of her Response to Defendant's Motion for Summary Judgment, which is dated one day before Plaintiff's Response was filed. Defendant maintains that "Plaintiff crafted this self-serving affidavit" in contradiction to her deposition testimony. Rebuttal [85] at 8-9. Construing all evidence at this stage in Plaintiff's favor, the Court will assume that Plaintiff has shown that she engaged in activity protected by Title VII and the ADEA.

Turning to the second element of Plaintiff's prima facie case, the parties do not dispute that Plaintiff experienced an adverse employment action.[6] Therefore, Plaintiff has satisfied the second element of a prima facie case of retaliation under Title VII and the ADEA. *See Royal*, 736 F.3d at 400 (Title VII); *Holtzclaw*, 255 F.3d at 259 (ADEA). Assuming Plaintiff could show the third element of her prima facie, causation, Defendant has offered a legitimate, non-retaliatory reason for its action based upon Plaintiff's work performance. *See Strong*, 482 F.3d at 805; *Sherrod*, 132 F.3d at 1122. Plaintiff must come forward with substantial evidence to create a jury question on whether Defendant's reason for the adverse employment action

---

[6] Plaintiff essentially claims that she suffered three adverse employment actions:  two disciplinary notices and her termination. The parties do not adequately address in their briefs whether the two written disciplinary notices constitute "adverse employment actions" to support retaliation claims under Title VII and the ADEA. *But see, e.g, Simmons-Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 275 (5th Cir. 2013) ("written warnings . . . do not constitute materially adverse actions" under Title VII because they are not ultimate employment decisions) (citing *McCoy*, 492 F.3d at 559). Assuming without deciding that the two disciplinary notices constitute adverse employment actions under Title VII and the ADEA, the result would not change.

was a pretext for retaliation.  *See Strong*, 482 F.3d at 806; *Sherrod*, 132 F.3d at

1122; *see also Feist*, 730 F.3d at 454.

> (iii)   Pretext

Plaintiff relies upon the temporal proximity between her complaints to

McCarthy and the final two disciplinary notices she received and her subsequent

termination.  Mem. Supp. of Resp. in Opp'n to Mot. [84] at 31.   Plaintiff appears to

argue that in August 2011 she began to feel that Murry was targeting her for

termination, at which point she complained to McCarthy.  *Id.*  According to

Plaintiff, "[t]he performance/discipline notices then continued."  *Id.*  Plaintiff

received one in October 2011 and another in November 2011, and was

recommended for termination in December 2011.  *Id.*  Defendant counters that

Plaintiff cannot establish a causal connection between "her alleged complaints and

her later counselings (some of which [Plaintiff] admitted were true) or her

termination."  Rebuttal [85] at 10.  Defendant maintains that Plaintiff cannot

demonstrate that its actions were pretext for retaliation because the counseling for

Plaintiff's poor performance began prior to Plaintiff complaining to McCarthy about

Murry.  *Id.* at 9-10.

The ultimate issue is whether Plaintiff can prove that the protected activity

in which she engaged under Title VII and/or the ADEA was the "but for" cause of

her disciplinary notices and termination.  *Sherrod*, 132 F.3d at 1122.  Any discipline

Plaintiff received prior to the time Plaintiff first engaged in protected activity

cannot logically support a retaliation claim. *See Peace v. Harvey*, 207 F. App'x 366, 368 (5th Cir. 2006).

With respect to the October and November 2011 disciplinary notices and Plaintiff's January 2012 termination, "[P]laintiff must reveal a conflict in substantial evidence on the ultimate issue of retaliation in order to withstand . . . summary judgment." *Id*. Once an employer articulates a legitimate, non-retaliatory reason for its adverse employment action, "[t]emporal proximity, standing alone, is not enough." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012); *see also Strong*, 482 F.3d at 808. Plaintiff has offered little beyond temporal proximity and her own subjective beliefs as a basis for showing that the ultimate "but for" cause of her adverse employment actions was Defendant's retaliatory animus.

Plaintiff's reliance upon temporal proximity in this case is insufficient to create a jury question on causation. *See Hernandez*, 670 F.3d at 658; *Strong*, 482 F.3d at 808. While Plaintiff also complains about the way Murry ignored her during store manager meetings, Dep. of Debbie Kopszywa [83-1] at 121-22, the law is clear that "petty slights, minor annoyances, and simple lack of good manners' are not actionable retaliatory conduct; Title VII 'does not set forth a general civility code for the American workplace.'" *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 490 (5th Cir. 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Plaintiff has not offered evidence sufficient to permit a reasonable jury to conclude that Plaintiff's termination or her October and November 2011 disciplinary notices

28

were in retaliation for engaging in any protected conduct.  "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden on a motion for summary judgment."  *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citation omitted).

Plaintiff has not shown a conflict in substantial evidence on the ultimate issue of "but for" causation with respect to her retaliation claims.  *Hernandez*, 670 F.3d at 658.  Nor has Plaintiff produced sufficient competent evidence to refute each of the legitimate, non-retaliatory reasons Defendant offers in support of its decision to terminate Plaintiff's employment.  Accordingly, the Court is of the opinion that Plaintiff has not met the burden placed upon her of submitting sufficient evidence to create a question of fact as to whether Defendant's legitimate, non-retaliatory reasons for terminating her employment were a pretext for retaliation.  Defendant is entitled to judgment as a matter of law on Plaintiff's retaliation claims.

    c.    <u>Plaintiff's Hostile Work Environment Claims</u>

Plaintiff advances hostile work environment claims based on her age and gender.  To support an age-based hostile work environment claim, Plaintiff must establish that (1) she was over the age of 40; (2) she was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.  *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (citation omitted).  In order to satisfy the third prong of this standard, "a plaintiff must

demonstrate that the harassment was objectively unreasonable." *Id.* (citation omitted).

> A workplace environment is hostile when it is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment." *Alaniz v. Zamora–Quezada*, 591 F.3d 761, 771 (5th Cir. 2009). Moreover, the complained-of conduct must be both objectively and subjectively offensive. *EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007). This means that not only must a plaintiff perceive the environment to be hostile, but it must appear hostile or abusive to a reasonable person. *Id.* To determine whether conduct is objectively offensive, the totality of the circumstances is considered, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.*

*Id.*

Turning to Plaintiff's hostile work environment claim based on gender, the Fifth Circuit has held that

> [w]here a harassment claim arises out of a supervisor's conduct, "there are four elements of a hostile working environment claim: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on [a protected characteristic]; and (4) that the harassment affected a 'term, condition, or privilege' of employment." *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 162–63 (5th Cir. 2007). To affect a term, condition, or privilege of employment, the harassing conduct "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Aryain v. Wal–Mart Stores of Tex., L.P.*, 534 F.3d 473, 479 (5th Cir. 2008) (alteration in original) (quoting *Lauderdale*, 512 F.3d at 163). We use an objective "reasonable person" standard to evaluate severity and pervasiveness. [*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998).] Ultimately, whether an environment is hostile or abusive depends on the totality of circumstances. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

*E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 452 (5th Cir. 2013).

30

Plaintiff's grounds her hostile work environment claims solely on the manner in which she claims Murry treated her.  Plaintiff acknowledges that Murry never raised his voice at Plaintiff or called her any names.  Dep. of Debbie Kopszywa [83-1] at 126.  Plaintiff testified that the only manifestation of Murry's purportedly targeting her was Murry's documentation of Plaintiff's work performance.  *Id.* at 125.  Based upon the record evidence submitted, Murry prepared four written Performance/Discipline Notices about Plaintiff's work performance and conducted one verbal coaching with Plaintiff.  Murry's disciplinary action toward Plaintiff occurred approximately once a month from July to November 2011.

Plaintiff also relies upon Barlow's testimony.  Barlow, who was 50 years old when Plaintiff was terminated, testified that Murry would speak differently to Barlow than he did to the younger males who worked at the Picayune store.  Dep. of Allison Barlow [83-16] at 11, 44.  Barlow complained that Murry "wouldn't make eye contact.  If you tried to speak, he would cut you off.  It was kind of a harsh, berating, condescending – it was tough."  *Id.*  Barlow testified that Murry spoke to Plaintiff the same way Murry spoke to Barlow.  *Id.*

Considering the totality of the circumstances in the light most favorable to Plaintiff, she has not shown the necessary frequency or severity of the purported discriminatory conduct to demonstrate that her work environment was objectively offensive.  "Title VII is not 'a general civility code for the American workplace."  *Boh Bros. Const. Co.*, 731 F.3d at 460 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).  Nor has Plaintiff demonstrated that any of Murry's

alleged conduct was physically threatening or humiliating, or that it interfered with her ability to work.  The only evidence that Murry's alleged harassment of Plaintiff was based upon her gender or age is Barlow's and Plaintiff's testimony based upon their own subjective beliefs.  This is insufficient to satisfy Plaintiff's summary judgment burden.  *Ramsey*, 286 F.3d at 269 (citing *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)).  Summary judgment is appropriate on Plaintiff's hostile work environment claims.

B.    <u>Defendant's Motion to Strike [75]</u>

Because no party has cited to or relied upon Webster's expert reports or testimony in connection with Defendant's Motion for Summary Judgment, and because the Court finds that summary judgment in Defendant's favor is appropriate, Defendant's Motion to Strike [75] Webster's expert reports and testimony is rendered moot.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that Plaintiff has not met her summary judgment burden.  Defendant's Motion for Summary Judgment [77] should be granted, and Defendant's Motion to Strike [75] is moot.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant Home Depot U.S.A., Inc.'s Motion for Summary Judgment [77] is **GRANTED**, and Plaintiff Debbie Kopszywa's claims against Defendant are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Defendant Home Depot U.S.A., Inc.'s Motion to Strike [75] is **MOOT**.

**SO ORDERED AND ADJUDGED**, this the 22nd day of October, 2014.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE